UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

ROBERT HARRINGTON,
               Plaintiff

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
VICTOR CLAY, individually
& MARIA MEJIA, individually
               Defendants.

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

---

ROBERT HARRINGTON, by and through his attorneys, Burger Law Group PLLC, alleges as follows:

## NATURE OF CLAIM

1. This action is brought to remedy discrimination based on age, in violation of the Age and Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and the Massachusetts General Laws Chapter 151B § 4 et seq. ("MGL").

2. Complainant seeks declaratory relief, compensatory, punitive, and emotional damages as well other appropriate legal and equitable relief pursuant to the ADEA and the MGL such as attorney's fees, costs, and interest.

## JURISDICTION

3. The Court has jurisdiction under 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction with respect to plaintiff's claims under the MGL.

4. As the unlawful employment practices complained of herein occurred within the District of Massachusetts, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PROCEDURAL REQUIREMENTS

5. On or about June 15, 2022, Harrington filed a Complaint of Discrimination with the Massachusetts Commission Against Discrimination (hereinafter, "MCAD"), docket number: 22NEM01429, which was jointly filed with the Equal Employment Opportunity Commission (hereinafter, "EEOC"), and assigned docket number 16C-2022-01621.

6. On March 6, 2025, Harrington submitted a request to withdraw his case from MCAD so he could pursue his claims in Court. Accordingly, Harrington has satisfied all procedural requirements to bringing this action.

## PARTIES

7. Plaintiff Robert Harrington ("Harrington") was employed as a Lieutenant with the Harvard University Police Department ("HUPD") and was an employee as that term is defined by the ADEA and MGL. He is a resident of Cohasset, Massachusetts.

8. The President and Fellows of Harvard College is the legal name for Harvard University. Harvard University is a private university with its principal office located in Cambridge, Massachusetts.

9. Upon information and belief, Victor Clay is a resident of Cambridge, Massachusetts and, at all relevant times, the appointed Chief of the Harvard University Police Department.

10. Upon information and belief, Maria Mejia is a resident of Jamaica Plain, Massachusetts and, at all relevant times, the Harvard University Central Human Resources representative assigned to the Harvard University Police Department.

## FACTUAL ALLEGATIONS

Harrington's Employment History

11. Robert Harrington was born on October 16, 1954, he is 70 years of age.

12. Lieutenant Harrington is an attorney and member of the Massachusetts Bar accepted to practice in Massachusetts, Federal District Court of Massachusetts, and the First Circuit Court of Appeals.

13. Prior to commencing employment at the HUPD in November 2013, Harrington had been employed as a police officer with the City of Boston Police Department ("BPD") for over thirty-one (31) years.

14. During his employment with BPD, Harrington received multiple promotions and was successful in achieving the rank of Superintendent.

15. Harrington held many assignments during his thirty-one year career at the BPD, including as a patrol officer in the Bureau of Field Services, a Detective in the Bureau of Investigative Services, Sergeant Detective in the Internal Affairs Division, Lead Investigator for the Firearms Discharge Investigation Team, Sergeant Detective in the Homicide Unit, Lieutenant Detective Executive Officer in the Homicide Unit, Superintendent and Bureau Chief of the Internal Affairs Unit, Superintendent and Bureau Chief of the Professional Standards and Development Unit. At the time of his retirement from BPD, Harrington was Commander of the Special Investigations Unit which investigated organized criminal enterprises in the City of Boston.

16. Harrington also taught classes at the Boston Police Academy, including Search Warrant Law and Execution, SWAT Legal and Operational Issues, Misconduct Avoidance, Ethics in Policing, Municipal Law, Court Procedures, Homicide and Death Investigations, Critical Incident Command Legal Issues, Brady and Giglio Issues for Police Officers as well as other subjects determined to be necessary for police officers.

17. In addition, Harrington has worked as a member of the adjunct faculty at the following educational institutions: Boston University School of Medicine, University of

Massachusetts Lowell Graduate School, Curry College and as a guest instructor at the following educational institutions: Quincy College, Bridgewater State College and Northeastern University.

18. Harrington is also a recognized subject matter expert in the area of police internal investigations and officer-involved firearm discharges and has taught or provided consulting services in those areas nationally and internationally.

Harrington's Employment at Harvard University

19. In November of 2013, Lieutenant Harrington was hired by Harvard University Police Chief Francis Riley, and appointed to the position of Lieutenant in the Harvard University Police Department, included in his offer of employment was the assignment of a take-home vehicle.

20. Beginning in 2013 Lieutenant Harrington was assigned to the Patrol Division of the Department supervising subordinate uniformed officers and their work product.

21. Then in 2018, Lieutenant Harrington was assigned to the Criminal Investigation Division supervising subordinate detectives and their work product and in 2019, Lieutenant Harrington was assigned to supervise the Dignitary Protection Unit as an increase to his existing duties and responsibilities.

22. Throughout his tenure with HUPD, Lieutenant Harrington has consistently received praise for his work performance, and salary bonuses more than the standard bonus plan amounts.

23. In 2020, Chief Francis Riley retired from the Harvard University Police Department.

Harrington's Employment at Harvard after Victor Clay becomes Chief of Police

24. In or around July of 2021, Victor Clay was hired as the Chief of the Harvard University Police Department.

25. In or around August 12, 2021, Lieutenant Harrington met with Chief Clay to give him an overview of the Criminal Investigative Unit and the Dignitary Protection Unit and their outstanding cases and events. This was the only one-on-one meeting that Chief Clay had with Lieutenant Harrington.

26. On August 17, 2021, Chief Clay, after confirming and scheduling with Lieutenant Harrington a meeting with all of the staff of the Criminal Investigative Unit, cancelled the meeting and never re-scheduled it. At this time Lieutenant Harrington began to notice and experience negative treatment from Chief Clay.

27. Except for the August 12, 2021 meeting, Lieutenant Harrington has not had a meeting with Chief Clay regarding the units he commanded and their responsibilities, nor has he had any discussions with Chief Clay about Harrington's responsibilities, unit performance, evaluation of unit personnel, short- or long-term vision for the units or any budgetary or resource discussions regarding the units he commanded. This was a stark contrast to what occurred in the ordinary course of business under former Chief Riley.

28. In or about early September of 2021, Chief Clay, in a corridor conversation, with no warning or explanation, advised Lieutenant Harrington that he was stripping the Dignitary Protection Unit from his command.

29. In or around September 20, 2021, Assistant Chief Denis Downing, at the specific direction of Chief Victor Clay, advised Lieutenant Harrington that he was being removed from all dignitary protection responsibilities and was not to be assigned to any dignitary protection visits or to travel with the President of Harvard University on official trips domestically and internationally which he had done on multiple occasions as part of his responsibilities in the Dignitary Protection Unit. When asked why this action was ordered, Assistant Chief Downing

advised Lieutenant Harrington that he did not know, and that Chief Clay gave him no reason for the removal.

30. Chief Clay's presence at the weekly senior staff meetings of the department were infrequent and at no time when he was present were any issues about the Criminal Investigative Unit or Dignitary Protection Unit discussed.

31. Throughout the fall of 2021, Chief Clay continued to exclude Harrington from decisions involving his unit.

32. Then abruptly on November 8, 2021, Lieutenant Harrington was placed on administrative leave by Chief Clay so the department could conduct an investigation regarding Lieutenant Harrington's alleged involvement in a sick leave request by a subordinate officer. Harrington was stripped of his badge, gun, ID Card, and his police equipment. His assigned police take-home vehicle was removed from his driveway.

33. On December 1, 2021, while Lieutenant Harrington was out on administrative leave, Chief Clay announced in a department wide email that the police department was being restructured and that four new Captain's positions were being established.

34. The job posting stated that all candidates would receive consideration for appointment without regard to any characteristic protected by law. The required qualifications of a successful candidate were, "documented experience and training in investigations, police operations and tactics" as well as "law enforcement experience at a municipal police department, Sheriff's department or federal agency." Since Lieutenant Harrington, met those requirements he applied for the Captain's position on January 5, 2022.

35. Then on January 7, 2022, while out on administrative leave, Lieutenant Harrington was contacted by Dick McInnis, Harvard Human Resources as a witness regarding an age

discrimination complaint filed by former Deputy Chief of Police Kevin Regan against Chief Victor Clay.

36. Lieutenant Harrington cooperated with the investigation and provided truthful, candid responses regarding Chief Clay and Mr. Regan's Complaint. Specifically, Harrington conveyed that he felt Chief Clay was isolating older members of the Senior Staff and was unwilling to communicate with them on issues affecting their responsibilities.

37. On March 3, 2022, Lieutenant Harrington, was advised by Chief Clay that there was no misconduct on his part and that he was to be returned to full duty on March 7, 2022. Chief Clay was not able to even articulate the alleged misconduct that motivated him to place Harrington on involuntary administrative leave to begin with.

38. On March 8, 2022, two days after returning from leave, Lieutenant Harrington interviewed with Chief Clay and Maria Mejia from human resources for the captain's position to which he applied in January. The process was defined as thirty minutes to present qualifications and address the areas of operations, administration, and investigations, followed by a fifteen-minute question and answer period.

39. On March 9, 2022, Lieutenant Harrington received a telephone call from Ms. Mejia advising him that he was not selected for the Captain's position. He was told that he did not "articulate a vision for the department," a consideration that was not part of the assessment criteria provided to candidates.

40. On March 9, 2022, Chief Clay announced the four promotions to Captain. Lieutenant Harrington was passed over in favor of the four younger, less qualified, less experienced candidates.

41. Upon information and belief, Lieutenant Harrington was and is more qualified than the four candidates promoted.

42. Only one of the candidates promoted to Captain had ever held the rank of Lieutenant in any police department.

43. Only one of the sergeant's promoted to Captain met the qualifications to have had "law enforcement experience at a municipal police department, Sheriff's department, or federal agency."

44. Two of the sergeants promoted to Captain had no prior municipal law enforcement experience and one did not have any experience in training or investigations.

45. Upon information and belief, none of the promoted individuals had experience in SWAT team operations.

46. Harrington believes that in failing to promote him to Captain, Harvard and Chief Clay acted with discriminatory animus and bias against Harrington because of his age in violation of the ADEA and the MGL.

47. In the alternative, Harrington believe that Harvard and Chief Clay failed to promote him to Captain in retaliation for Harrington engaging in protected activity, that is, cooperating in the investigation of the complaint made by former Deputy Chief Kevin Regan, as protected under the ADEA and the MGL.

48. As a result of the above, Harrington suffered and continues to suffer lost wages, lost benefits, harm to his reputation, emotional distress, attorney's fees and costs and interest.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION

**(Violation of the ADEA)**

49. Harrington repeats the allegations set forth above and below as if fully contained herein.

50. Plaintiff Harrington is over the age of forty (40).

51. At all relevant times Plaintiff was qualified to perform the job functions required by his position.

52. By the acts and practices described above, defendants have discriminated against Harrington by failing to promote him to the Captain position, on the basis of age, in violation of the ADEA.

53. Defendants acted intentionally and with malice and/or reckless indifference to Harrington's federally protected rights.

54. Harrington has suffered lost wages, lost benefits, harm to his reputation, emotion distress and humiliation, attorney's fees and costs, and interest, as a result of Defendant's discriminatory practices.

## SECOND CAUSE OF ACTION

### (Age Discrimination – Violation of M.G.L. c. 151B)

### (Against Defendants)

55. Plaintiff hereby realleges the allegations set forth above as if fully set forth herein.

56. Plaintiff Harrington is over the age of forty (40).

57. At all relevant times Plaintiff was qualified to perform the job functions required by the Captain position.

58. By the acts and practices described above, defendants have discriminated against Harrington by failing to promote him to the Captain position, on the basis of age, in violation of the MGL.

59. Defendants acted intentionally and with malice and/or reckless indifference to Harrington's federally protected rights.

60. Harrington has suffered lost wages, lost benefits, harm to his reputation, emotion distress and humiliation, attorney's fees and costs, and interest, as a result of Defendant's discriminatory practices.

### THIRD CAUSE OF ACTION

### (Retaliation – Violation of M.G.L. c. 151B, § 4(4))

### (Against Defendants)

61. Plaintiff hereby repeats the allegations set forth above as if fully set forth herein.

62. Defendants retaliated against Lieutenant Harrington for exercising rights protected under M.G.L by, inter alia, not promoting him and depriving him of earned compensation and benefits, causing compensation not to be paid or otherwise interfering with the terms and conditions of his employment.

63. As a result thereof, Lieutenant Harrington suffered and continues to suffer loss of income, loss of benefit, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

### FOURTH CAUSE OF ACTION

### (Interference and Aiding and Abetting – Violation of M.G.L. c. 151B, §§ 4 (4A) and 4 (5)) (Against Victor Clay and Maria Mejia)

64. Plaintiff hereby reallege the allegations set forth above in paragraphs 1 through 63.

65. Victor Clay and Maria Mejia interfered with Lieutenant Harrington's employment of the right to be free from unlawful discrimination, acted in complete disregard of Lieutenant Harrington's rights, and aided and abetted the President and Fellows of Harvard College in its discrimination against Lieutenant Harrington, in violation of M.G.L. c. 151B, §§ 4(4A) and 4(5).

66. As a result thereof, Lieutenant Harrington suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities and other losses including emotional distress and mental suffering.

## DEMAND FOR TRIAL BY JURY

67. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff requests an Order and Determination:

    a. pursuant to the MGL;

    b. declaring that the acts and practices complained of herein are in violation of M.G.L;

    c. permanently enjoining these violations of M.G.L.;

    d. directing Defendants to place Plaintiff in the position he would have occupied but for the Defendant's discriminatory treatment of him, and make him whole for all earnings he would have received but for Defendants discriminatory treatment, including but not limited to: wages, bonuses, pension and other lost benefits;

    e. directing Defendants to pay Plaintiff compensatory damages for his emotional distress and personal, professional and reputational harm;

  f. directing Defendants to pay punitive damages for its intentional disregard and or reckless indifference to Plaintiff's statutory rights;

  g. awarding Plaintiff any costs of this action together with reasonable attorney's fees;

  h. awarding such further relief as is deemed necessary and proper.

DATED: March 7, 2025      **BURGER LAW GROUP PLLC**

               By: *[signature]*

               Sarah J. Burger, Esq. (BBO# 569370)
               sburger@burgerlawgroup.com
               Attorneys for Robert Harrington
               One Boston Place, Suite 2600
               Boston, MA 02108
               Tel. (617) 419-7152