UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT HARRINGTON,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE, VICTOR CLAY, individually, and MARIA MEJIA, individually,<br><br>Defendants. | * * * * * * * * * * * * * * * | Civil Action No. 25-cv-10570-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Robert Harrington ("Plaintiff" or "Harrington") brings this action against Defendants the President and Fellows of Harvard College ("Harvard"); Victor Clay ("Clay"), former Chief of the Harvard University Police Department; and Maria Mejia ("Mejia"), Harvard University human resources representative (collectively, "Defendants"), alleging employment discrimination based on age, unlawful retaliation, and aiding and abetting violations of his statutory rights. See generally [ECF No. 27 ("Amended Complaint" or "Am. Compl.")]. Currently before the Court is Defendants' motion to dismiss Plaintiff's complaint in its entirety. [ECF No. 28]. For the reasons set forth below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

# I. BACKGROUND

## A. Factual Background

For purposes of the instant motion to dismiss, the Court, as it must, "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)).

Plaintiff was born on October 16, 1954, and is 71 years of age. [Am. Compl. ¶ 11]. Plaintiff was formerly employed as a lieutenant with the Harvard University Police Department ("HUPD"). [Id. ¶ 7]. Before joining the HUPD, Plaintiff was a police officer with the City of Boston Police Department ("BPD") for 31 years. [Id. ¶ 13]. During his time at the BPD, Plaintiff served in multiple roles, including as a patrol officer in the Bureau of Field Services; as a detective in the Bureau of Investigative Services, the Internal Affairs Division, and the Homicide Unit; as the lead investigator for the Firearms Discharge Investigations Team; and as the superintendent and bureau chief of the Internal Affairs Unit and the Professional Standards and Development Unit. [Id. ¶ 15]. He taught classes at the Boston Police Academy and was an adjunct faculty member at multiple area colleges and universities. [Id. ¶¶ 16–17]. Plaintiff is also an attorney and a member of the Massachusetts Bar. [Id. ¶ 12].

Plaintiff joined the HUPD in November 2013 as a lieutenant and was assigned to the Patrol Division supervising uniformed officers. [Am. Compl. ¶¶ 19–20]. In 2018 he was assigned to the Criminal Investigation Division supervising detectives, and in addition to those duties, in 2019 he was assigned to supervise the Dignitary Protection Unit. [Id. ¶ 21]. Plaintiff alleges that while he was employed at the HUPD, he was consistently praised for his work and received higher than standard bonuses. [Id. ¶ 22].

In 2020, HUPD Chief Francis Riley retired, and in approximately July 2021, Clay was hired as his replacement. [Am. Compl. ¶¶ 23–24]. Around August 2021, Plaintiff met with Clay to provide him with an overview of the Criminal Investigative and Dignitary Protection Units. [Id. ¶ 25]. Plaintiff alleges that after his August 2021 one-on-one meeting with Clay, he had no other meetings with Clay regarding Plaintiff's work assignments, performance, responsibilities, or other matters. [Id. ¶ 27]. In September 2021, Clay removed the Dignitary Protection Unit from Plaintiff's command without explanation, and through Assistant Chief Downing, informed Plaintiff that he was relieved from all dignitary protection responsibilities. [Id. ¶¶ 28–29]. Plaintiff alleges that "Clay's presence at the weekly senior staff meetings of the [HUPD] were infrequent," and that Clay excluded Plaintiff from discussions regarding Plaintiff's units from the outset of his arrival. [Id. ¶¶ 30–31].

On November 8, 2021, Clay placed Plaintiff on administrative leave while the HUPD investigated Plaintiff's involvement in a subordinate officer's sick leave request. [Am. Compl. ¶ 32]. Plaintiff alleges that he was stripped of his badge, take-home vehicle, and other equipment, and that these measures were more punitive than those taken against other officers who were placed on leave. [Id. ¶ 32]. In December 2021, while Plaintiff was on leave, Clay announced that the HUPD was being restructured and that four new captain positions were being created. [Id. ¶ 33]. Plaintiff alleges that the restructuring was motivated by a discriminatory animus towards older members of the HUPD. [Id. ¶ 34].

The posting for the new captain positions stated that all candidates would be considered without regard to any protected characteristics, and that the qualifications included: "documented experience and training in investigations, police operations and tactics" and "law enforcement

experience at a municipal police department, Sheriff's department or federal agency." [Id. ¶ 35]. Plaintiff applied for a captain position on January 5, 2022. [Id.].

On January 7, 2022, while Plaintiff was still on leave, he was contacted by Dick McInnis from Harvard Human Resources regarding an age discrimination complaint filed against Clay by former Deputy Chief of Police, Kevin Regan, relating to the restructuring (the "Regan Investigation"). [Am. Compl. ¶ 36]. Plaintiff cooperated in the investigation and conveyed that he felt Clay that was "intentionally isolating older members of the Senior Staff and was unwilling to communicate with them on issues affecting their responsibilities." [Id. ¶ 37].

On March 3, 2022, Plaintiff was notified that the HUPD had found no misconduct on his part regarding the sick leave issue, and he was expected to return to full duty on March 7, 2022. [Am. Compl. ¶ 38]. In the evening of March 4, 2022, Mejia informed Plaintiff that he was selected to interview for the captain position on March 8, 2022. [Id. ¶ 39]. The interview was to consist of 30 minutes during which the candidate could present his or her qualifications, followed by 15 minutes for questions and answers. [Id. ¶ 41]. Plaintiff alleges he was unable to access his department laptop where the interview preparation materials were until March 7, 2022, and was, therefore, left with little time to prepare for his interview, which he felt was intentional on the part of Clay and Mejia. [Id. ¶ 40]. Plaintiff claims that during his interview, Clay and Mejia intentionally interrupted him multiple times in an effort to make him fail. [Id. ¶ 42].

On March 9, 2022, Mejia advised Plaintiff that he had not been selected for a captain position because he had not articulated a vision for the department, which Plaintiff claims he did provide, even though it was not an identified evaluation criterion. [Am. Compl. ¶ 43]. Clay then announced the four captain promotions, each of which went to younger candidates, whose ages

ranged from nine to twenty-six years younger than Plaintiff, and who Plaintiff alleges were less qualified for the position. [Id. ¶¶ 45–46]. Plaintiff claims that three of the promoted sergeants had never held the rank of lieutenant in any police department, two had no prior municipal law enforcement experience, and one did not have any experience in training or investigations. [Id. ¶¶ 48–49]. Plaintiff alleges that there was no legitimate, non-discriminatory reason to deny him the promotion. [Id. ¶ 44].

### B. Procedural History

Plaintiff filed his original complaint on March 7, 2025. [ECF No. 1]. Defendants filed a motion to dismiss on October 3, 2025, [ECF No. 17], and on December 5, 2025, Plaintiff filed the Amended Complaint, [Am. Compl.]. Defendants moved to dismiss the Amended Complaint on December 19, 2025. [ECF No. 28]. Plaintiff opposed, [ECF No. 36], and Defendants replied, [ECF No. 39].

## II. LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Maddox, 732 F.3d at 80 (quoting Santiago, 655 F.3d at 72). A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 80 (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not required, the complaint must be facially plausible, meaning that "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Consequently, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

Determining whether a complaint is facially plausible "invites a two-step pavane." Maddox, 732 F.3d at 80 (citing Grajales v. P.R. Ports Auth., 682 F.3d 40, 45 (1st Cir. 2012)). First, courts "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "Conducting a plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

## III. DISCUSSION

In the Amended Complaint, Plaintiff asserts an age discrimination claim against Harvard under the Age Discrimination in Employment Act ("ADEA") (Count I), an age discrimination claim against Harvard under Massachusetts General Laws chapter 151B (Count II), a retaliation claim against Harvard under Massachusetts General Laws chapter 151B, § 4(4) (Count III), and an interference and aiding and abetting claim against Clay and Mejia under Massachusetts General Laws chapter 151B, §§ 4(4A), 4(5) (Count IV). [Am. Compl. ¶¶ 53–70].

### A. ADEA and Mass. Gen. Laws ch. 151B Age Discrimination Claims Against Harvard

"Because the analyses of age discrimination claims under the ADEA and Chapter 151B are 'substantially similar in all relevant respects,' the claims can be examined together using the framework applicable to ADEA claims." Cocuzzo v. Trader Joe's East Inc., 121 F.4th 924, 930 (1st Cir. 2024) (quoting Adamson v. Walgreens Co., 750 F.3d 73, 83 (1st Cir. 2014)). "The ADEA makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)). If a plaintiff is unable to present direct evidence of age discrimination, as is frequently the case in discrimination cases, his claim should be evaluated using the three-stage burden-shifting framework from McDonnell Douglas Corp. v. Green. Keith v. HarbourVest Partners LLC, No. 25-cv-11384, 2026 WL 858663, at *4 (D. Mass. Mar. 30, 2026) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

"The first step of the McDonnell Douglas inquiry requires [the plaintiff] to make out a prima facie case of employment discrimination." Cocuzzo, 121 F.4th at 931. To establish a prima facie case of age discrimination under the ADEA or 151B, the plaintiff must show: (1) he was at least 40 years old at the time when he experienced an adverse employment event; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the employer filled the position with a younger person of similar qualifications or otherwise did not treat him age neutrally in the adverse employment action decision. Id.; Arroyo-Audifred, 527 F.3d at 219; Walsh v. HNTB Corp., 169 F.4th 330, 338–39 (1st Cir. 2026) (citing Del Valle-

Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 130 (1st Cir. 2015)). If the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for its decision," Arroyo-Audifred, 527 F.3d at 219, and if the defendant is able to do so, the plaintiff must then demonstrate that the defendant's proffered reason is pretextual, id.

At the motion to dismiss stage, however, the plaintiff need not necessarily "plead facts sufficient to establish a prima facie case," Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013), rather, "plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial," Prado-Hernández v. R&B Power, Inc., 2017 WL 11927752, at *2 (D.P.R. Mar. 31, 2017); see also Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) ("[N]o single allegation need [establish] . . . some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." (quoting Ocasio–Hernández, 640 F.3d at 14–15)).

Accepting Plaintiff's allegations as true, he has asserted that: (1) he was over the age of 40 at the time when he was passed over for a promotion; (2) he was qualified for his position based on his past experience as an officer with both the BPD and the HUPD; (3) he suffered an adverse employment action when he was not promoted to captain; and (4) the captain positions were filled with younger individuals with less experience or fewer qualifications than him. See [Am. Compl. ¶¶ 11–22, 43, 45–49]. The Court finds that Plaintiff has pleaded enough facts to make his claim of age discrimination plausible.

Defendants contend that Plaintiff has not pleaded a prima facie case of age discrimination because he has failed to sufficiently allege a causal connection between his age and being passed over for the captain promotion. [ECF No. 29 at 6]. While it is true that Plaintiff is required to

allege that there was a "causal connection" between the fact that he was denied a promotion and his age, see Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016), he has done so by alleging that Harvard awarded the captain promotions to younger officers with fewer qualifications, [Am. Compl. ¶¶ 45–49]; see Higgins v. State St. Corp., 323 F. Supp. 3d 203, 204 (D. Mass. 2018) (finding that plaintiff had alleged no facts demonstrating a causal connection between his age and the adverse employment action, stating that he, for example, had not claimed that the defendant "hired a younger person with equal or lesser qualifications to fill the positions for which he applied").

Further, Plaintiff's Complaint includes other allegations, such as him being stripped of his Dignitary Protection Unit responsibilities, excluded from decisions regarding the Criminal Investigation Division and the Dignitary Protection Unit, and placed on administrative leave with little explanation,[1] [Am. Compl. ¶¶ 25–32], and that Clay isolated older members of the Senior Staff, [id. ¶ 37], that support his age discrimination claims. Accordingly, Plaintiff has sufficiently pleaded age discrimination claims against Harvard under the ADEA and Massachusetts General Laws ch. 151B.

---

[1] Defendants argue that to the extent Plaintiff attempts to allege that Clay's actions prior to March 7, 2022 constituted discrimination under Massachusetts General Laws ch. 151B, those claims are time-barred. [ECF No. 29 at 5 n.2]. While Defendants are correct that the statute of limitations for civil claims under Massachusetts General Laws ch. 151B is three years, and therefore any claims based on allegations prior to March 7, 2022 are time-barred, see Mass. Gen. Laws ch. 151B, § 9, "evidence of events that fall outside the statute of limitations may still be admitted as relevant background evidence to show that discriminatory animus motivated the acts that occurred within the statute of limitations," Rae v. Woburn Public Schs., 113 F.4th 86, 110 (1st Cir. 2024) (quoting Malone v. Lockheed Martin Corp., 610 F.3d 16, 22 (1st Cir. 2010)); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (finding that even outside the statute of limitations, a plaintiff may still "us[e] the prior acts as background evidence in support of a timely claim"). Accordingly, the Court will consider Plaintiff's allegations that occurred prior to March 7, 2022 as context for his allegations of discriminatory animus.

**B. Mass. Gen. Laws ch. 151B Retaliation Claim Against Harvard**

Massachusetts General Laws ch. 151B, § 4(4) prohibits a person or employer from "discharg[ing], expel[ling], or otherwise discriminat[ing] against any person because he has opposed any practices forbidden under this chapter." Mass. Gen. Laws ch. 151B, § 4(4). "[I]n order to establish a prima facie case of retaliation under [the] Massachusetts anti-discrimination statute, [a plaintiff] 'must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse job action.'" Fantini v. Salem St. Coll., 557 F.3d 22, 35 (1st Cir. 2009) (quoting Thompson v. Coca-Cola Co., 522 F.3d 168, 181 (1st Cir. 2008)). Once a plaintiff has established a prima facie case, "a standard that has been described as requiring only a 'small showing,' the McDonnell Douglas burden-shifting framework applies." Morales v. Fed. Express. Corp., 610 F. Supp. 3d 317, 327 (D. Mass. 2022) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003)).

Defendants contend that Plaintiff has not alleged sufficient facts to plausibly show a causal connection between his participation in the Regan Investigation and the subsequent decision not to promote him to captain. [ECF No. 29 at 8]. In response, Plaintiff points primarily to the temporal proximity between his participation in the Regan Investigation, including his statements indicating that he believed Clay was intentionally isolating older members of the department, and, approximately two months later, his not being promoted to the captain position. See [ECF No. 36 at 5].

In evaluating his retaliation claim, the Court must read Plaintiff's Amended Complaint holistically, with the review to include temporal proximity as one factor. Garayalde-Rijos, 747 F.3d at 25; see Nedder v. UMass Mem'l Health Care Inc., 772 F. Supp. 3d 87, 93 (D. Mass.

2025) (finding at the motion to dismiss stage, that close temporal proximity of one month for one defendant and two months for another defendant supported inference of causal link between protected activity and adverse employment action); see also Navarro v. U.S. Tsubaki, Inc., 577 F. Supp. 2d 487, 501 (D. Mass. 2008) ("evidence of an adverse employment action's temporal proximity to a plaintiff's protected activity may be sufficient in some cases to avoid summary judgment"). Plaintiff has sufficiently alleged that he engaged in a protected activity by cooperating in the Regan Investigation, and that he suffered an adverse employment action when he was not promoted to captain. [ECF No. 36 at 5]. Taking Plaintiff's Amended Complaint as a whole, he claims that he expressed concerns in connection with an internal complaint, and relatively soon thereafter was passed over for a promotion that was instead awarded to arguably less qualified candidates. As such, the Court finds that Plaintiff has adequately pleaded a retaliation claim against Harvard.

### C. Interference and Aiding and Abetting in Violation of Mass. Gen. Laws ch. 151B

In Count IV, Plaintiff brings two different claims against both Clay and Mejia: (1) interference with his right to be free from employment discrimination, in violation of Massachusetts General Laws ch. 151B § 4(4A); and (2) aiding and abetting Harvard in its discrimination against him in violation of Massachusetts General Laws ch. 151B § 4(5). [Am. Compl. ¶¶ 68–70].

#### 1. Interference

Chapter 151B "explicitly imposes liability on individuals," Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 146 (D. Mass. 2011), including individuals who, for example, "intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or

protected by th[e] chapter," Mass. Gen. Laws ch. 151B, § 4(4A). To bring a claim for interference against an individual defendant, Plaintiff must plead facts supporting the elements of a prima facie case against that individual defendant. See Baker v. Columbia Sussex Mgmt., LLC, No. 21-cv-11632, 2021 WL 6137261, at *4–6 (D. Mass. Dec. 29, 2021) (dismissing interference claims under 151B § 4(4A) because the plaintiff did not allege that the individual defendants were part of the group that discriminated against her). More specifically, for an interference claim, the "plaintiff must allege facts showing 'that the defendant interfered with h[is] rights under [Chapter 151B] in deliberate disregard of those rights,'" id. at 4 (quoting Saari v. Allegro Microsystems, LLC, 436 F. Supp. 3d 457, 466 (D. Mass. 2020)), and "[i]n cases based on circumstantial evidence of discrimination, individuals may be held liable if: (1) they had the authority or the duty to act on behalf of the employer; (2) their action or failure to act implicated rights under the statute; and (3) there is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's protected rights allowing the inference to be drawn that there was intent to discriminate or interfere with the complainant's exercise of his rights," Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 278–79 (D. Mass. 2011).

Regarding Clay, Plaintiff has adequately alleged that Clay, as HUPD Chief had the authority to act on behalf of Harvard, and that Clay's involvement with the captain interview process and decision to not promote Plaintiff, impacted Plaintiff's rights under Chapter 151B. With respect to deliberate disregard, Plaintiff alleges that Clay stripped him of his Dignitary Protection Unit duties, [Am. Compl. ¶ 28], isolated older staff members, [id. ¶ 37], placed him on administrative leave without an articulable explanation, [id. ¶ 32], instigated the departmental restructuring to push out older staff members, [id. ¶¶ 33, 36], and interrupted Plaintiff multiple

times during his interview, [id. ¶ 42].[2] Plaintiff asserts that these allegations support the proposition that Clay acted with discriminatory animus and bias against him by not promoting him to captain due to his age. [Id. ¶ 50]. The Court finds that the interference claim against Clay, though thinly pleaded, is sufficient at this stage of the litigation to suggest that Clay acted in deliberate disregard of Plaintiff's right to be free from age discrimination in the workplace.

With respect to Mejia, Plaintiff has not sufficiently alleged that she acted in deliberate disregard of his rights. Plaintiff claims only that Mejia informed him that he was selected to interview, [Am. Compl. ¶ 38], interrupted him during his interview in an attempt to make him fail, [id. ¶ 42], and notified him that he was not promoted to captain because he had not articulated a vision for the department, [id. ¶ 43]. Plaintiff does not, however, allege that Mejia engaged in any of these actions due to his age, in retaliation for his participation in the Regan Investigation, or with deliberate disregard for any of Plaintiff's other rights protected under Chapter 151B. As such, Plaintiff has failed to sufficiently plead an interference claim against Mejia.

2. Aiding and Abetting

Chapter 151B also imposes liability on individuals who "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under th[e] chapter." Mass. Gen. Laws ch. 151B, § 4(5); see Baker, 2021 WL 6137261, at *4–6 (dismissing aiding and abetting claim under 151B § 4(5) because plaintiff failed to plead "that any of the individual defendants participated in

---

[2] Defendants argue that Clay's relevant conduct is largely time-barred under the statute of limitations aside from his involvement in Plaintiff's promotion interview process. [ECF No. 29 at 10–11]; [ECF No. 39 at 2–3]. As the Court has already noted, however, Plaintiff's time barred allegations may still be considered as context for alleged discriminatory animus. See supra note 1.

depriving her of the right to employment free from discrimination"); see also Comley v. Media Plan. Grp., 108 F. Supp. 3d 6, 15 (D. Mass. 2015) (dismissing claims of individual liability under Mass. Gen. Laws ch. 151B against corporate officers who did not participate in the alleged discrimination). For an aiding and abetting claim, the plaintiff must allege: "(1) that the defendant committed a wholly individual and distinct wrong . . . separate and distinct from the claim in main; (2) that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under M.G.L. c. 151B." Coogan v. FMR, LLC, No. 15-cv-13148, 2018 WL 4405614, at *10 (D. Mass. Sep. 17, 2018) (quoting Ping Zhao v. Bay Path Coll., 982 F. Supp. 2d 104, 115 (D. Mass. 2013)); Lopez v. Commonwealth, 978 N.E.2d 67, 82 (Mass. 2012).

Plaintiff has not alleged sufficient facts to support an aiding and abetting claim against either Clay or Mejia because his claims against both individuals are completely coterminous with his primary allegations of discrimination against Harvard. He alleges no distinct wrong committed by either Clay or Mejia that is separate from the claim in main, and, therefore, has not sufficiently alleged aiding and abetting liability under section 4(5) against either individual. See Dantowitz v. Dexter Southfield, Inc., No. 20-cv-10540, 2022 WL 4111910, at *7 (D. Mass. Sep. 8, 2022) (holding that the complaint did not separate the principal allegations of discrimination from any distinct acts of defendant to support an aiding and abetting claim); Runyon v. Wellington Mgmt. Co., LLP, No. 13-cv-11236, 2015 WL 1276825, at *8 (D. Mass. Mar. 20, 2015) (dismissing aiding and abetting claim against one defendant because plaintiff did not allege any separate and distinct wrong apart from the underlying discrimination but allowing aiding and abetting claim to go forward against another defendant who had allegedly made

fraudulent misrepresentation to plaintiff); Davidowicz v. 4M Fruit Distrib., Inc., 104 N.E.3d 685 (Mass. App. Ct. 2018) (affirming dismissal of aiding and abetting where plaintiff failed to allege that individual defendant committed a separate wrong from the claim in main). Plaintiff also has not sufficiently alleged that either Clay or Mejia "knew of [their] 'supporting role' in 'an enterprise designed to deprive [Plaintiff] of a right guaranteed to [him]' under Chapter 151B." Connolly v. Woburn Pub. Schs., 659 F. Supp. 3d 92, 116 (D. Mass. 2023) (quoting Mass. Gen. Laws ch. 151B, § 4(5)) (emphasis added). Additionally, with respect to Mejia, Plaintiff fails to allege that Mejia harbored an intent to discriminate against him based on his age or to retaliate against him for his participation in the Regan Investigation.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, [ECF No. 28], is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to all of the claims against Mejia and the aiding and abetting claim against Clay, which are hereby **DISMISSED**. The motion is otherwise **DENIED**.

**SO ORDERED.**

September 29, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE